UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROMEAUX GENERAL CONTRACTING, LLC § | |
| § | |
| *Plaintiff* § | |
| § | CIVIL ACTION NO : 1:21-CV-00531 |
| v. § | |
| § | |
| DEERE & COMPANY, INC. and § | |
| W. L. DOGGETT, LLC, d/b/a DOGGETT § | |
| MACHINERY SERVICES, § | |
| § | JURY TRIAL REQUESTED |
| *Defendants* § | |

## AMENDED COMPLAINT

### I.   Parties

1.     Plaintiff is **Romeaux General Contracting, L.L.C.** which now and has been at all times material hereto a Louisiana limited liability company organized under the laws of the State of Louisiana, with its domicile address at 909 Tauzin Island Rd., Natchitoches, Louisiana 71457; further, its sole member and officer is Joseph Longlois.

2.     Defendant, **DEERE & COMPANY, NC.**, (hereinafter "Deere"), is a corporation organized under the laws of the State of Delaware, domiciled at 1209 Orange Street, Wilmington, Delaware 19801, whose principal place of business is 1 John Deere Place, Moline, Illinois 61265, authorized to do and doing business in the State of Louisiana, whose agent for service of process is C T Corporation System, 3867 Plaza Tower, Baton Rouge, LA 70816.

3.     Defendant, **W. L. DOGGETT, LLC**, **d/b/a DOGGETT MACHINERY SERVICES,** (hereinafter "Doggett"), is a Texas limited liability company domiciled and with its principal place of business located at 9111 North Freeway, Houston, Texas 77037, authorized to

do business in the State of Louisiana, whose agent for service of process is C T Corporation System, 3867 Plaza Tower, Baton Rouge, LA 70816; ; the company has one officer, director, general partner, or manager, whose name is WM. Leslie Doggett, who is a citizen of the State of Texas.

## II.   Jurisdiction

4.   This Court has jurisdiction over this controversy or cause of action because the plaintiff and the defendants are completely diverse in citizenship, as shown above.  Further, the amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332, or $75,000.00, inasmuch as:

a.  This is a suit for the rescission of the sale of a track loader under Louisiana's redhibition laws, where the purchase price was $82,500.00;

b.  An additional expense surrounding the sale was sales tax of $6,435.00;

c.  The complainant has entered into a contingency fee contract of at least 30% with undersigned counsel, with expected attorney's fees exceeding $25,000.00;

d.  Any value of the plaintiff's use of the track loader, which would otherwise be credited against the amounts set forth above, has been overridden by the inconveniences associated with and interruptions in use associated with the defective nature of the track loader and the defendant's constant attempts to repair;

e.  Simultaneously with the sale, a finance contract was entered into with a company affiliated with Deere, namely John Deere Financial, which has caused and will cause Plaintiff to incur finance charges.

## III.   Venue

5.   Venue is proper in this district under 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated in this district.

## IV. Conditions Precedent

6.        All conditions precedent have been performed or have occurred.

### V.  Facts

#### A.  The Transaction

7.        On or about August 30, 2018, Plaintiff purchased a used 2016 John Deere 333G compact track loader with new motor (hereinafter "loader"), with factory options, MH80 mulching head, 48" pallet forks, and severe duty door, from Doggett in Shreveport, Louisiana. The loader was purchased primarily for Plaintiff's use in the business of land development and clearing in Natchitoches Parish, Louisiana, and surrounding areas. The sales contract was presented to Plaintiff Robert Morgan at the the Doggett dealership in Shreveport, Louisiana, and was executed at the dealership, and simultaneously therewith, a finance contract was entered into with a company affiliated with Deere, namely John Deere Financial, which has caused and will cause Plaintiff to incur finance charges.

8.        The sales price of the track loader, mulcher and accoutrements was $82,500.00, excluding sales taxes.. The total cost of the loader and attachments, including sales taxes was $88,935.00.

9.        Deere was the manufacturer and warrantor of the loader, motor, mulching head, 48" rail pallet forks, and AT438266 severe duty door.

#### B.  Implied Warranties

10.        As a result of the sale of the track loader, mulcher, and accoutrements to Plaintiff, an implied warranty of fitness for a particular purpose and merchantability arose in the transaction which included the guarantee that the track loader was fit for the ordinary purpose for which such

machinery is purchased, and that the machine would substantially free from defects and the need to constantly and continually repair the machine.

11. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendant Deere through its various dealerships, and its dealership, Doggett. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C.   Express Warranties

12. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the loader occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the loader had, in fact, repaired the defects.

13. Plaintiff's purchase of the loader was accompanied by express warranties offered by Deere and extending to Plaintiff. These warranties were part of the basis of the bargain of Plaintiff's contract for purchase of the loader.

14. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in both defendants' warranty booklet and owners manual.

### D.   Actionable Conduct

15. In fact, when Plaintiff took possession, the loader was defective in materials and workmanship, with such defects being discovered within the warranty periods, and with repairs

having been done by authorized repair facilities within one year of the date of filing herein, and which repairs have been excessive and have caused damage to the track loader. Within the first few months after purchase, Plaintiff began experiencing defective conditions with the loader. Many defective conditions have occurred since purchase, some of which were repaired, and some of which include repair within one year of the date of filing suit herein, but which were experienced while Plaintiff was using the loader in an ordinary manner, including, but not limited to:

    a.    Turbo outlet hose being ripped causing loud hissing noise coming from engine compartment and turbo outlet hose found to have major rip and turbo hose Product Improvement Program (Deere-issued bulletin) and parts replacements performed; repeat issues with the hose occurred;

    b.    Regeneration malfunctions;

    c.    Mulching head hydraulic leaks;

    d.    Mulching attachment leak and hydraulic oil level found to be severely low and hydraulic line found to be leaking at elbow; elbow removed and inspected and elbow found to be broken and new adjustable orifice elbow installed and hose installed on mulching head;

    e.    Premature cam sensor and track replacement;

    f.    Fuel pump replacement;

    g.    Turbo outlet hose and clamps requiring replacement;

    h.    Engine regeneration issues; quick detach not working and quicktach found to be unable to move to locked position and fuse found to be blown and replaced;

    i.    Failure of water in fuel warning devices to properly alert operator;

      j.      Machine catching on fire and having to be repaired.

    16.      Since the purchase, Plaintiff has had authorized warranty service by defendant Doggett, as Deere's authorized service dealer, on numerous occasions from the date of its purchase; the loader continues to this day to exhibit some or all of the non-conformities described herein and in fact exhibits malfunctions to the extent that the loader is completely useless to the Plaintiff and is not being used and is presently at Doggett for continued repairs.

    17.      The repairs, repeat repairs, and reappearance of the same symptoms, and the incompatibility with the mulching head, show that the loader was manufactured with some physical imperfection or deformity, or it lacks necessary components or a certain level of quality.

    18.      As the distributor and warrantor, Deere is conclusively presumed to know prior to the sale that the loader contained the defects described above that would cause the loader fail to operate in the intended manner during normal use.

    19.      The defects experienced by Plaintiff with the loader and attachments substantially impaired its use, value and safety.

    20.      Plaintiff directly notified Deere and Doggett of the defective conditions of the loader on numerous occasions.

### Count 1: Violations of the Louisiana Redhibition Laws

    21.      Plaintiff re-alleges and incorporates by reference herein each and every allegation set forth in the preceding paragraphs.

    22.      The loader is a "thing" under La. Civil Code Articles 2520, et seq.

    23.      "Deere", as distributor and warrantor is a "seller" under La. Civil Code Articles 2520, et seq.

24. Plaintiff is each a "buyer" under in La. Civil Code Articles 2520, et seq.

25. "Deere" and "Doggett" are both a seller with actual and/or imputed knowledge of the defects in the loader sold to the plaintiff.

26. The defects described in the loader meet the definition of a redhibitory defect or defects as defined in La. Civil Code Articles 2520, et seq.

27. Plaintiff has provided the Defendants notice and sufficient opportunity to repair the defective loader.

28. Further, plaintiffs has made an insurance claim for the machine fire, and have also incurred expenses to Plaintiff for repairs caused by the defects, and for parts, repairs by other companies for preservation of the machine.

29. Plaintiff performed each and every duty required of them under Louisiana Redhibition Laws, except as may have been excused or prevented by the conduct of the Defendants, as herein alleged.

30. The hidden defects in the loader existed at the time of sale, but were not discovered until after delivery. Multiple defects existed in the loader, even though some are minor or have been repaired. The loader is not usable or its use is so inconvenient that neither Plaintiff nor a reasonable prudent buyer would have purchased the loader had they known of the defects prior to the sale.

31. Furthermore, Defendants failed to perform the repair work in a good and workmanlike manner through its dealerships. In any event, defendant Deere is independently liable for defects that existed in the manufacture of products imported, warranted, and distributed by it In any event, Doggett is liable for negligent repair for failing to fix defects timely and attempting repeat repairs. This conduct by Defendants constitutes a breach of the implied warranties under Louisiana

law, and entitles Plaintiff to a rescission of the sale, return of the purchase price, plus all collateral costs of the sale, finance charges, insurance premiums, and out of pocket expenses.

32. Under Louisiana Redhibition laws, Plaintiff is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiff prevails.  As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect its rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Fred A. Pharis.  Plaintiff has incurred and continues to incur legal fees, costs and expenses in connection therewith.

## VI.   Damages

33. The conduct described above has been and is a producing and proximate cause of damages to Plaintiff.

34. The loader has been out of use and/or service by reason of defective performance and/or repair for excessive periods of time; plaintiff shows that said lack of use of loader has caused lost profits and/or income to Plaintiff and has caused extra expenses because of the loader being unavailable; therefore, Plaintiff was unable to perform the jobs it could have had it not been for the defective nature of the loader.

35. Plaintiff's damages include rescission of the sale including all collateral costs at the time of the sale, loss of the purchase price, any and all finance charges, insurance premiums, maintenance costs, repair costs, economic loss and/or lost profits, together with applicable penalties and attorney fees allowed by law, and with legal interest upon the entire sums awarded from the date of sale or from judicial demand or from judgment, until paid, and for all costs of these proceedings.

## VII.     Request for Rescission

36.     Plaintiff seeks the remedy of rescission of the sales contract.

37.     Plaintiff revokes its acceptance of the loader with mulcher for the reason that its defects substantially impair its use, value, and safety to Plaintiff and the acceptance was based on Plaintiff's reasonable reliance on the false representations and warranties of the Defendants that the defects in the loader would be repaired, and no reasonable prudent buyer would have purchased the loader with knowledge of these defects prior to the sale.  Accordingly, Plaintiff seeks a cancellation of the sales contract and an order of the court restoring to Plaintiff the money obtained by Defendant as a result of the false representations and breaches of express and implied warranties as set forth above.  Plaintiff also seeks cancellation of the debt and offer to return the loader to the Defendant.

## VIII.     Attorney Fees and Costs

38.     Plaintiff is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiff prevails.  As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect its rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Fred A. Pharis.  Plaintiff has incurred and continues to incur legal fees, costs and expenses in connection therewith.

## IX.     Prayer for Relief

39.     For these reasons, Plaintiff prays for judgment against the Defendants for the following:

     a.     For general, special and actual damages according to proof at trial;

     b.     Rescinding the sale of the loader with mulcher and acoutrements and returning to Plaintiff the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

    c.    For incidental and consequential damages according to proof at trial;

    d.    Out of pocket damages for expenditures related to any cost of repairs, deductibles and transportation charges;

    e.    Any diminution in value of the loader attributable to the defects;

    f.    Past and future economic losses;

    g.    Presale, prejudgment and post-judgment interest;

    h.    Attorney's fees;

    I.    Costs of suit, expert fees and litigation expenses; and

    j.    All other relief this Honorable Court deems appropriate.

### X.  Demand for Jury Trial

40.    Plaintiff hereby demands trial by jury to the extent authorized by law.

_____
**FRED A. PHARIS**
of **PHARIS LAW OFFICES**
831 DeSoto Street
Alexandria, LA  71301
Telephone:  (318) 445-8266
Fax: (318) 445-5981
email: fpharis@pharislaw.com
LA Bar Roll No. 1536
**ATTORNEY FOR ROMEAUX GENERAL CONTRACTING, L.L.C.**